Mr. Miller, are you ready to proceed? Yes, I am, Your Honor. Okay, you can go right ahead. Thank you. May it please the Court, my name is Darren Miller, and I'm with the Office of State Appellate Defender, and I represent the defendant appellant, Maricel Arciga. Your Honor, Ms. Arciga was convicted of solicitation of murder for hire by a jury. Her sole defense at trial was that she was induced by an informant, Gabriel Guardo, and we raised four contentions of error, so I'll just jump right into those. The first one I'd like to discuss is the Rule 431B's error. As Your Honors know, that rule requires the Court to inquire of the prospective jurors whether they understand and accept the four principles stated within that rule. Here, Judge Bowles did not comply with that rule. Instead of telling the jurors whether they understood and accepted those principles, she asked whether they had difficulty or disagreement with those principles. And the same issue by the same judge with the same phraseology was addressed in dismuke, where this Court found that to be error. Really don't have much more to say than that other than I believe dismuke totally controls that issue. Moving on to the two trial errors, we've alleged ineffective assistance of counsel for two reasons. First, with the entrapment defense being raised, Maricela's lack of criminal history was important for the jury to hear, and it was relevant, and case law holds that it's admissible. It's relevant to show lack of predisposition. And as one court noted, it is highly improbable that a person with no criminal record would voluntarily engage in criminal conduct unless induced. Maricela, at the time of the alleged offense, was 23 years old. She had no either juvenile or adult criminal record whatsoever, yet trial counsel did not put this into evidence, and this would have aided the jury in possibly concluding that Maricela lacked the type of personality that would be inclined to commit this crime without being induced by by Gabriel. The second allegation of ineffective assistance of counsel has to do with the state's hearsay objections, and essentially, Maricela was on the stand trying to tell her story about how Gabriel was inducing and inciting her to commit this offense, and by my count, either seven or eight times, she was discussed trying to discuss what Gabriel said to her that would induce her, what did he say that got her to go along with this plan, and each time, the state objected on hearsay grounds, and the hearsay objections were sustained, and this is improper under the case of People v. Quick. That case also involved a solicitation of murder and an unsuccessful entrapment defense, and essentially, what an informant says to a defendant to induce her to commit the crime of solicitation of murder is not hearsay because it's offered to show the effect on her state of mind and not to prove the truth of the matter asserted. So each one of these eight statements were improperly denied admission. Effective counsel would have decided to quit and argued that they were admissible as going to her state of mind, but instead, defense counsel only argued that they were admissible for impeachment purposes, and that argument was rejected. Moving on to the last error, which would be both we assert ineffective assistance of counsel and plain error. At one point during the deliberations, the jury asked for the definitions of incited and induced. The court refused to give the definition. Defense counsel did not ask for those definitions to be submitted to the jury and agreed with the court to not define these key terms. Obviously, incited and induced are key to the entrapment defense. It was the only defense raised by Marisol at trial, and the jury, by asking what these terms meant, demonstrated they were confused. And if you look at the case of People v. Landware, it's virtually identical to this case except for the term at issue there was originated, which used to be in the entrapment instruction, and here the terms are incited and induced. And essentially, that court held that the term originated involved a question of law. The jury was entitled to have its question answered regarding the question of law, and that's true even if they were properly instructed in the first place. And like here, that issue was not properly preserved, and this court found prejudice in Landware due to, one, the importance of the defense and juror confusion. And we have the same two issues here. The importance of the defense was her sole defense. Juror confusion was expressed by the mere fact that they were asking for the definitions of these two terms. Had the terms been given or defined for the jury, there is no reason for counsel not to have asked for the definition. The definition of incite includes words such as encourage, set in motion. The word induced includes to influence or act in the course of conduct. And these are very broad definitions, which would have made it easier to convince the jury that Maricela was induced by Gabriel's conduct. The last point I'd like to make just touches on the prejudice aspect of this. Although under Landware, I think we established prejudice without even getting into the closely balanced nature. Nevertheless, for the other points and for the ineffective, we have to show that the case was closely balanced. And a rational jury could have found that Maricela wasn't trapped. She had, especially if they were properly given the evidence that they should have been given. Maricela had no criminal record. This was a case of credibility, Maricela against Gabriel. The September 22nd recording mysteriously, one would argue a jury could find was either destroyed or intentionally not recorded. At any rate, it was by the state's own admission. It never was made despite the overhear order. And it was during that conversation where Maricela testified, she told Gabriel she didn't want anything to happen to Juan and that he got mad. We don't have the full version of what Gabriel did or said because so many of the state's objections based on hearsay were sustained. But we are able to get at least that much out of the testimony. Maricela kept telling Gabriel no, according to her version, but Gabriel said his cousin was ready to go. The conduct is not consistent with somebody wanting to kill without inducement. She told Gabriel that she didn't have money and didn't want to get a loan. Someone who was all gung ho, so to speak, on killing someone wouldn't be so hesitant and not enthusiastic about raising the money. When she showed up to meet the undercover police officer, she didn't have the cocaine that she was supposed to get for a partial payment. Maricela also testified that Gabriel gave her a $500 ring for payment. She didn't give that to the undercover officer. And obviously, although in order to even raise the defense of entrapment, she has to admit the offense and she did commit the offense, all this shows that her reluctance and hesitance and irrational jury could have found that she did not have the natural instinct to do this without being incited or induced. Thank you. Okay, thank you. Any questions? Yes, thank you. Counsel, aren't the terms incite and induce commonly understood and really don't need any further definition? Well, I mean, that's exactly the issue in Landwehr. Landwehr, the argument was originated, was commonly understood, and this court rejected that argument and essentially held that regardless of whether you or I might be familiar with the terms, the jury wasn't in Landwehr and wasn't in this case and they need help. And when they express confusion, it's the court's job to, when they express confusion about a question of law, which it was in Landwehr and was here, the court has an obligation to remedy that by answering the jury's question. Okay. The fact that he called it hearsay as opposed to non-hearsay renders that to be the same, is that correct? In other words, preserved it for us to review it as a non-plain air, not as plain air. Certainly, if your honors think that objecting in general is good enough to preserve the issue, I have no qualms with that. But my thought was that when the attorney, had the attorney objected on the proper basis and told the court, like, look, this was admissible, not just for impeachment, but as substantive evidence so that my client can get her story out there and getting her story out there necessarily includes the jury hearing what the informant was telling her. And without that getting out there, there's no way that the jury can fully understand the circumstances of this case. And with respect to Supreme Court Rule 431B, there was no objection raised when the court used the improper admonishment to the jury. Is that correct? Yes, your honor, that's correct. And that was also the case in Dismuke and is usually the case in these 431B cases. Because of the timing, Dismuke, in fact, came well after this case. Even though it's the same trial court, the trial court had, before this case, had an opinion from our second district. Is that correct? My recollection is that she did not have the benefit of Dismuke that this trial occurred before Dismuke was decided. I could be wrong about that, but I'm pretty sure that I'm not wrong because I'm sure I would have noted that. I'm not saying that the judge did anything intentional, but just as was the case in Dismuke, she gave the same improper 431B admonishment. And so, as in Dismuke, it was error here. Yeah, and Dismuke, it did. As I recall, this trial was in 2014 and our court issued the Dismuke opinion in 2017. Even though it involved the same judge and the majority in that case with Justice Burke dissenting, found with the number of errors, they reversed that based upon the rule. But thank you. I have no further questions. Thank you, Your Honor. Thank you. Counsel, with respect to the failure to address the criminal history of the 23-year-old defendant, the lack of her criminal priors, the state relies on People v. Evans. How do you distinguish that case when they basically say because of age, it's really, you know, the lack of priors is not remarkable? Yeah, I don't have that case in front of me, but my recollection is that the defendant in Evans was slightly younger and also had a juvenile record, and that case did not involve an entrapment defense. And I think these are all fact-specific. Here you have a 23-year-old lady who, let's say, I forget the age of a juvenile, 12, 13. So at least from the age of 13 to 23, she committed – had no delinquency adjudications or no adult criminal convictions. And this is true despite the fact that seemingly her former boyfriend, the informant, pretty much all the people in her life as far as the friends and boyfriend, at least according to trial, they all had criminal records. So she managed not to have any criminal records up until the age of 23 despite having those influences around here, and I think that that's pertinent for a jury to hear that she's not the type of person that would normally go along with such a plan. With respect to the hearsay objections, I mean, counsel was trying with the court, and he was unsuccessful when he would – you know, he did a sidebar, tried to get those statements in. How was that ineffective? I mean, whether they came in – for whatever purpose, the judge wasn't letting that statement in. So how was he ineffective? Did he not give it the good old college try, if you will, and the judge kept shutting him down? Well, no, Your Honor, I don't think it's a matter of counsel not trying. I mean, it appears that counsel was fighting hard for the defendant, but it's still incumbent on the trial attorney to inform the court to the proper basis for admitting such crucial evidence. And given that this evidence just is at the heart of the defendant's case, yes, it's great, and we shall be happy that defense attorneys are fighting for their clients, but it's also necessary. But you're saying that the failure to give a proper basis was what fell below the standard. Right, yes. Okay. Yes, correct. The Landwehr case – the defense in Landwehr felt that the word originated, as Justice Bridges pointed out, just as the words here, incited and induced, really are – between 12 people, I would – one would think that they would be able to figure out what those words meant, correct? Well, I mean, I would guess not just, again, because it's the same in Landwehr. You could make the same argument that the term originated, that the 12 of them should have been able to figure out what the term originated meant. That's common, and Landwehr said that just does not matter. I mean, what we're looking at is that the jury is going to the trouble of asking the court for the definitions of these terms that they're confused about what they mean. And I would also point out that even though we could say we know what incite or induce means, I don't know that I necessarily know what incite or induce means. I mean, you look at the dictionary, and there are – you know, it says arouse, urge, provoke, encourage, stir up, instigate, set in motion. I don't know if I, off the top of my head, would have all those thoughts or ideas as far as what incite meant. And had they been given that definition, they could have clung on to any one of those terms to find that she was incited or that she was induced. All right. Okay. I have no further questions for you. Thank you. Thank you. Oh, I have one further question. The ring. Okay. Her testimony that she was given that by Gallardo. I never saw testimony that he said he gave that to her. Did that ever come out, or was that just her testimony? I think my recollection was he denied giving it to her, but it was her testimony, and the jury could have – it was up to the jury to believe whether they believed her or him. Right. And her sister said she never had such a ring. Correct. I think her sister testified that. Yeah, that's correct. Thank you. You're welcome. Yes. Can everyone hear me? Yes. May it please the court, counsel, Adam Trejo, on behalf of the people of the state of Illinois. Defendant first argues that there was an alleged violation of Rule 431B because the trial court committed plain error in explaining the zero principles to the jury pool. Now, as defendant discussed, he cites people v. Dismuke, and this court is correct. This was decided after the trial in this case had occurred. But assume in arguendo that error did occur, defendant still has to establish plain error, and he didn't discuss this analysis during his argument. I would like to focus my argument on the plain error analysis. It's the defendant's burden. In this case, the evidence was not closely balanced. This case really centered on the credibility of two witnesses, the defendant and Gabriel, who the state refers to as Alex, not Gabriel. And there was a no credibility contest because the defendant's testimony was not plausible and it strained credibility. Now, in order to rely on the defense of entrapment, a defendant must admit to committing all the elements of the charged offense. That did not happen in this case. The defendant testified that she did not intend to kill Juan Garcia. On September 22nd, when she met with Alex, she testified that she told him she wanted nothing bad to happen. Now, on October 4th, her final meeting with Detective Gomez. She said that I didn't give him a ring, which allegedly Alex had given her, and also didn't give payment or any drugs or nothing because she believed if she would if she withheld that, that nothing would have happened to Juan. Immediately after exiting that vehicle, she was arrested. Thus, she testified that she never had an intent to kill Juan Garcia. Therefore, the entrapment defense was not available to her. But irrespective of her statements, her actions contradicted her own statements as well. When she testified that on September 22nd, when she met Alex, that Alex forced her into doing this plan, I would like to point out that before meeting with Alex on September 22nd, she went to a library, went on Juan's social networking site, printed a photograph of Juan and his girlfriend, and brought it with her to that meeting, thus establishing that she was predisposed and was not induced by the statements allegedly made by Alex at that meeting. And although she did testify that she had sexual intercourse with Alex during her first week, during the first week of October and October 12th, her testimony was not believable because she was arrested on October 4th. Thus, she could not have had sexual relations with Alex on October 12th. And the state acknowledges that Alex did send flirtatious text messages beginning around September 24th. This was two days after the plan had already been formulated. This was after she had printed the photograph of Juan, after she had written relevant information on Juan Garcia, including his address, the car he drove, the interstate he drove on, and his upcoming court date. So, yes, these flirtatious text messages did occur, but they occurred after that plan had already been formulated and initiated. Furthermore, when Alex sent these types of messages, he never commingled or mentioned Gomez or defendants planning to hire a hitman. Now, her testimony included other exaggerations which proved that she was testifying with a self-serving agenda in regards to certain questions. For example, defendant testified that on September 22nd, she received approximately 50 phone calls from Alex. But after being confronted with her phone records, that wasn't entirely accurate. She acknowledged that Alex had actually called her seven times. Her testimony included other exaggerations, including that Alex had her mind, body, and soul, which was not believable because she had known Alex for less than a month. Quite frankly, I don't know how somebody can have your mind, body, and soul if you haven't even known them for a period of 30 days. But the statements that contradicted defendant the most came from herself. After she was arrested, she provided a statement to the police, and she unequivocally stated Alex had nothing to do with this, thus contradicting any possible statements that defendant tried to introduce. And when you look at the whole case, the statements made to officers, the statements provided at trial, there's no consistency within her testimony and there's no consistency within her conduct because she's providing self-serving testimony. But moreover, the state introduced other crimes evidence for the purpose of establishing intent and state of mind. And here, Michael Weiss testified that in May 2009, he encountered defendant at a parking lot in an apartment, and defendant asked Michael if he knew anyone who can, quote, fuck Juan up. She also said that she wanted defendant shot. She would pay money and indicated that she had $2,500. That prior incident clearly proved her intent and state of mind and that she was not induced by Alex. Moving on to defendant's second claim that counsel was ineffective for failing to introduce defendant's lack of criminal history. As this court noted, the state cites Evans, which holds for the proposition that in that case, a 19-year-old, the appellate court held that being 19 years old is not remarkable and not to have a criminal history. Here, defendant was 23 years of age. It's not remarkable. She doesn't have a criminal history. She's very young. But any positive inference that could have resulted from introducing this, this lack of criminal convictions on a record was completely undermined by the other crimes evidence and rebutted any positive inference relating to her character, reputation, predisposition and credibility, because the other crimes evidence in the form of prior bad acts showed that she had previously tried to solicit any person to murder Juan Garcia. Thus, defendant cannot establish the Strickland prejudice prong. Moreover, the first prong is not satisfied here. Counsel provided above standard representation. He tried to exclude the other crimes evidence in a motion in limine. When he when that was denied at trial, he tried to impeach Michael Weiss with prior convictions. And also he raised the issue in a post-trial motion. Thus, on either prongs, defendant cannot satisfy that. In regards to the hearsay statements, defendant and his opening brief really convolute to different legal concepts. And I would really like to really bring this to the attention of the appellate court. He cites minimal case law regarding non hearsay statements, but nonetheless proceeds to analyze his claims under the state of mind exception to the hearsay rule. And under that exception. The defendant must be unavailable. The declarant must be unavailable to testify. And here, Alex, the declarant did testify on behalf of the defense. And also the exception goes to the declarant state of mind, not to other people, including defendant. Thus. It would not have applied. Now, I do acknowledge that forfeiture is a limitation on the parties. And I do believe the argument that these statements were not hearsay has been forfeited because defendant didn't really flesh them out in his opening brief. But nonetheless, the non the non hearsay statements, even even if counsel would have introduced them or not, defendant cannot establish that he both prongs under Strickland. For example, the alleged statements occurred. One of a few statements occurred between September 19th and 20th. Those statements, those alleged statements were made before Alex became an agent on September 22nd. Since Alex was not an agent at that point, those statements would not have helped her entrapment defense. We don't know the full extent of those statements. And so it's pure, pure speculation. But, yes, I just want to clarify that Alex, he contacted the police on September 22nd, and that's when he became an agent. In regards to the statements that Alex made to defend it during a meeting on September 22nd. This if they had been admitted as non hearsay, they would have undermined her credibility even more. And therefore the Strickland, the Strickland prejudice is not met because that testimony, the alleged testimony indicated that Alex pushed her into committing this offense. But remember, she provided a post arrest statement saying that Alex had nothing to do with it. So these alleged non hearsay statements would have contradicted her and would have undermined her credibility. Moreover, her conduct, her that non hearsay statement would have been in contrast with her conduct. But because before those statements were made, she went to a library and printed a photograph of one with the intention of giving it to Alex. Therefore, neither neither Strickland prongs are met. And just a commentary on the first prong defendant is entitled to reasonable representation, not perfect representation. He tried to get these two statements in the fact that he didn't kitchen sink it with with every possible exception. An argument does not make them deficient. Moving on to the last. May I finish with two sentences? My last point. Briefly wrap it up. Yes. The jury instructions. There's a case on point. People be Sanchez. Blonder is distinguished distinguishable because the term originate. The definitions are in the IPI here. Induce an insight. The definitions are not in the IPI. Thank you very much. Just as bridges. Any questions? Yes. Thank you. Trejo, the question I have, I want to start with where you were almost ending. You mentioned that entrapment was not available to the defendant in this case because she never denied or because she denied ever having the intent to kill Juan Garcia. Now, you paid 16 in your brief. You mentioned that. But it's not for the argument that you made in your oral statement here about it not being available. So shouldn't this be forfeited as well? You're the first time you're raising is in your argument. Actually, the actually quoted the the the state's attorney where she points this out. And it's actually I'd like to I'd like to direct you to page eight of my brief. And there's a quote I mentioned. I say during closing arguments, the state argued that defendant failed to meet her intentions. And then I quote two paragraphs. She said, what I have heard is that the that the defendant admitted she committed the crimes. That's not what I heard on the witness stand. And she quoted, I never intended for Juan Garcia to die. So I believe that this was that this was preserved because because the state's attorney did argue to the jury that she never admitted her intentions. But I mean, it was never raised before the court that she was not entitled to the entrapment. Well, I will. I believe defense counsel argued that there was slight evidence to to shift the burden onto the state. And of course, the state opposed that the state opposed and said and said that there wasn't slight evidence to shift the burden of entrapment. So I do believe the state objected and said that, no, there was no evidence presented to shift the burden. OK. All right. And when you look at. The agent, Gomez, in this case and all of the in when you look at the record, he suggests that she could get cocaine from Gabriel to sell it to pay off the balance. He asked he asked her three times what she wants done. What manner does she want the death of Juan? He asked her what's in it for him. Tell me why. And there's a number of other things I won't go into because you're familiar with the record. But tell me why this wouldn't be considered inducement. So can you just clarify the statements, the questions, who made those questions? This is the testimony from the ATF agent Gomez. And in the record, it talks about how he asked her three times what she wanted done for her former boyfriend. He asked her what manner of death he asked. He continued to call her when the drug deal didn't get established. He had to call her a number of times. And so I wonder if this is the struggle the jury had with whether or not this would be inducement. So my question to you is tell me why this couldn't be considered inducement. Well, the government. Sure. Well, I'd like to point out that merely presenting an opportunity that's not inducement, merely providing an opportunity for the defendant to take. That's that is not an inducement. However, these statements as the evidence unfolded. And that's why the timeline is very important in determining if there is inducement. And if she was predisposed, the time that you need to look at the timeline when Gomez was asking those questions, that was September 26th. I'd like to point out that she had formulated that plan and therefore was not induced before September 26th. There was testimony from Alex that he had heard rumors within the workplace that she wanted one dead before Gomez made those statements. Defendant met with Alex before defendant before Gomez made those statements. Defendant had already gone to a library, looked at Juan's social social networking site, printed the photograph, wrote down every information about him. Therefore, because of the timeline, I don't believe the questions posed by Gomez induced her because she had already formed. Her actions showed that she had already informed the intent to go through with a plan days prior. Do you agree that if the jury had heard that it was Gabriel's idea to kill Juan and that once Juan was out of the picture, both he and the defendant could get back together, that there would be a reasonable probability that the outcome could have been different in this case? I'm sorry, can you rephrase your question? In other words, if the jury had heard the statements that were excluded by the question and then the answer regarding Gabriel's idea to kill Juan, could that have changed the outcome in this case? No, because I mentioned that if the statements were admitted, it would have just highlighted her, it would have undermined her credibility of what she's saying. Because if those were admitted, it would have been in stark contrast with her post-arrest statement, which she said Alex didn't have anything to do with it. It would have been another example of her providing conflicting testimony. And also, Alex allegedly said those statements after the defendant had already gone to a public library to print a photograph of Juan. So, like I said, timing is very important on when she decides if she was induced or not, because she had already formed the intent to have him taken out. And she had already taken steps before those statements were made to fulfill this plan. And that included finding out his court date. Defendant testified. I wasn't really in contact with him. I didn't ask him about the drugs. But she knew information about the defendant that undermined her credibility. She knew when he had a court date. She knew the date that he had to be killed because he had an upcoming court date and was probably going to be sentenced to jail. But in short, she took actions before the statements already happened, which showed that she wasn't induced. Thank you. I have no further questions. You indicate that how can anybody be mind, body and soul with somebody if you haven't known them that long? Well, she was 23 years old, right? I do. I do acknowledge she was 23. Yes. So young and stupid. And what would really what would really bode in her favor is that she loved him so much that when they asked her, she said Alex had nothing to do with it. So she was protecting him. Correct. Right. And again, that's assuming if you believe her, her testimony, but everything about her testimony was not reliable, not believable. And there are specific instances where their lives and the number one included. She said that she slept with him on October 12th. And as I mentioned, she was arrested on October 4th. Right now, you talk about this, Michael. She denied ever talking to him or even knowing him. And as a matter of fact, she denied ever even living at that address. Correct. This is true. And he said she had three kids and he named the ages of the kids, which she did not. This is true. Which credibility determination that was could be made by made by the jury. Absolutely. And I don't want to speculate how the credibility. Well, well, she was convicted. So, I mean, we kind of know which which witnesses they believed. But like I said, it's not that it's not that crazy because this happened in 2009. The fact that he didn't know the specific ages of children, multiple children are seen in apartment complexes. The important thing is, is that he remembered the specific interaction, not necessarily her specific financial family dynamic with where she where she lived in an apartment complex. He may have seen children were running around. I mean, I don't think it's that big of a deal. And he may and he may have seen this in the newspaper and wanted to weigh it. I mean, I believe. You're incorrect. I believe he he did come to the police after the charges were filed. That is correct. Now, let me ask you this question. Council under the Disney case. How do you distinguish that case in the way that Judge Bowles questioned the jurors there and the way she questioned the jurors here under the with respect to their principles? Oh, no, it's it's very similar. The state does acknowledge that that that they're similar instructions, which is why I really focus the crux of my analysis on the plane or the plane error analysis. But I'd like I said, I'd just like to point out to the dissent and that's which I did mention in in my brief that would speak to it. But as far as many differences, I acknowledge that there are not many differences within these their instructions. If we find that there was plane error in the court violated for 31 being the their principles, would we have to address all of the other issues raised? I would have to research that issue. And if you would like, I would like to submit a supplemental brief on the course of recourse. If that's if that's the the route this court is going to, I'd rather brief that answer than give you an answer off the bat. How do you distinguish the quick case? And you may have distinguished it when you were saying that it wasn't it wasn't as similar. But tell me again. Yes. Great. Absolutely. Well, there's different standards. And honestly, the defendant in this case has a different burden. There, the defendant was convicted of solicitation of murder to hire for asking an undercover police officer to murder her husband. However, that was reversed because the court held that the trial court committed error in excluding statements of hearsay. It did not reverse on the grounds of Strickland. It did a different it did a different. It analyzed it in a different way. It looked at the trial court, not the sufficiency of counsel. That's how you did not raise that both as trial error as well as ineffective assistance. Or am I am I thinking of the jury instruction question in the jury instruction question? The analysis is plain error and ineffective assistance of counsel. Yeah. OK. Yeah. Here it's strictly just it's strictly ineffective assistance of counsel. And that's a high. That's a high bar. You need a you need to pass both prongs. And that's how I would distinguish it. The analysis. The standard is much higher here. And then with respect to ineffective and plain error, the definition of incited in and do the court refused to give the instruction under land where the trial court refused to give the instruction. On the definition. How is this any different than land where? How do you distinguish land there? Where? Why should we not follow it? For sure. Well, one off the bat, there are two different terms. But also, yeah, land where is completely different because and this is where people be. Sanchez comes into play. People be. Sanchez has the same word, same defense. And basically what Sanchez stands for, the proposition is that if the term is not defined in the IPI, the trial court didn't commit error in providing that instruction here in land. What in land? Where was the term described in the IPI? It was. And that's the major distinction. OK. Yeah, the error there was that you have an IPI that that defines it. And also in land where the jury asked three times and asked for a dictionary here, the trial court asked the jury asked once and was satisfied with the response of the trial court gave. So in land where the the the jury was consistently asking after it. Right. They did ask more than they asked three times. Right. And also. But didn't the defense attorney here kind of lay down and said, OK, fine. Didn't really persist in providing anything further to the jury. Right. Because there is case law that when you when you provide additional definitions, there's risk that you open up to more confusion to the jury. And I'd like to point out that defendant in this brief provides multiple definitions for these terms. They include a bet that would have most certainly confused the jury. Barney, any other further questions? Hold on real quickly. OK, now. I don't have anything further at this point. Thank you. Thank you. The people of the state of Illinois respectfully request that this honorable court of hold defendant's convictions. Thank you. Thank you. Mr. Miller. Yes, your honor. Regarding the state's point that somehow the defense of entrapment was improperly allowed to be raised. I'd like to point out that the attorney for the defense on multiple occasions, both. I believe an opening and closing statements conceded the defendant's guilt. I mean, the whole trial, the entire trial was was based on an entrapment defense. It was raised in the defendant's answer. So that's simply wrong. That entrapment was improperly before the jury. And if you look at the jury, the state wants to act like this evidence is so overwhelming that no one could possibly believe that Maricela was induced. Yet this jury asked looks like one to at least three or four questions to the court. They were taking their job seriously. They asked, what is the definition of an agent or a public official? Can we have an audio recording of the final meeting with Maricela and Special Agent Gomez? Can we have a legal definition of incited and induced? Can we provide the text messages between Gabriel and Maricela leading up to and in nine twenty six? So the jury was obviously didn't think that it was so clear that there was no inducement. And the state kind of wants to have it both ways, because on the one hand, they're saying, oh, well, Maricela was didn't admit to committing this crime because she was hesitant, more or less. Yet, if she was not hesitant, they they'd come in and say, well, she was clearly predisposed. She wasn't hesitant. So it's kind of a catch 22. And essentially, if you follow the state's rationale, there would never be anyone who could be found not guilty by reason of entrapment. One of the things I'd like to quickly point out is the state's assertion that somehow the argument was forfeited in the brief. And it's clear from the brief that that the argument was that this went to Maricela's state of mind and that it was therefore admissible. And the state wants to more or less play games, engage in gamesmanship and pretend like they didn't know what the argument was about, even though the case cited was the one that we're relying on today. And it's it's clear that although technically it's not the state of mind exceptions, the hearsay rule, it's non hearsay on the argument was clear on the briefs. Unless this court has more questions. Justice Bridges, any questions? Yes, I do. And counsel, with respect to the entrapment defense, my question is, is that when the IPA IPI for entrapment was presented to the jury, juror, not to the jury, but actually before it to the court. Was there ever an objection made by the state that the entrapment was not available for this defendant? Not not to my recollection, Your Honor, and I don't think looking at the evidence, I don't think there could be a serious argument that there wasn't some evidence of entrapment in this case. So naturally, the state wouldn't be putting up a big fight about that. Apparently, up until appeal. So it's your position that the entrapment argument that it wasn't available to her is only being raised now on appeal. I believe so, Your Honor, I don't have the entire record memorized, but I certainly don't recall the state putting up any big fights against the entrapment instruction. I have no further questions. Thank you. Is it your position, counsel, that had the court given the two definitions that you are you. That they had requested that the results of this trial would have been different. Yes, Your Honor, especially when you look at the cumulative error. And if you look at. I'm sorry, we're on land where is that correct? I'm trying to know. Right. Could you repeat your question? Please? I got a little bit confused my mind. No, that's okay. Is it your position that had the trial court in this case had had they given the jury the definition of the two terms or the terms again? I'm sorry. Incite and induce. Incite and induce. That the results of this trial would have been different. Well, we don't know whether it would have been different, but there's a reasonable probability that it would have been different. Those terms open up a broad array of definitions, and I believe just the evidence of juror confusion and the importance of the defense and land where was enough alone without even necessarily establishing a closely balanced case. But here we also have a closely balanced case. I have no further questions at this time. Thank you very much for your arguments here today. We really appreciate your time, your intelligent arguments coming on this ride with us with the new the new world. And you both did a great job and we thank you very much. We will allow justice McLaren to listen to the argument, and then we will render a decision in due course. Have a great day and stay safe. Thank you. Thank you. Thank you.